IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LEONARD WILSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 25-00487-CV-W-BP |
| | ) |
| JACKSON COUNTY, MISSOURI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND (2) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs brought this suit against (1) Jackson County, Missouri, (2) the Jackson County Sheriff, and (3) the Jackson County Prosecutor (with the latter two Defendants sued in their official capacities only), challenging a Jackson County ordinance related to the sale and possession of firearms. Plaintiffs filed a Motion for Preliminary Injunction and Defendants responded with a Motion to Dismiss for Lack of Jurisdiction. After considering the competing arguments, the Court concludes that (1) the Motion to Dismiss, (Doc. 25), should be **GRANTED IN PART** and **DENIED IN PART** and (2) the Motion for Preliminary Injunction, (Doc. 9), should be **DENIED**.

### I. BACKGROUND

In November 2024, Jackson County passed Ordinance No. 5865 (the "Prior Ordinance"). Section 1 of the Prior Ordinance prohibited the sale of handguns and handgun ammunition to anyone under the age of 21. Section 3 of the Prior Ordinance generally restricted anyone under 21 from possessing a semiautomatic assault rifle.

This suit was filed in June 2025 to challenge the Prior Ordinance; the Plaintiffs are:

1. Leonard Wilson, Jr.,

2. Gun Owners of America, Inc. ("GOA"),

3. Gun Owners Foundation ("GOF"), and
4. The State of Missouri ("the State").

Counts I and II assert claims under 42 U.S.C. § 1983. Count I alleges the Prior Ordinance violated the Second Amendment and Count II alleges the Prior Ordinance was unconstitutionally vague. Count III alleges the Prior Ordinance was preempted by a state statute. Plaintiffs seek injunctive relief, declaratory relief, nominal damages, attorney fees and costs.

Approximately three and a half weeks after Plaintiffs filed their Motion for Preliminary Injunction, Jackson County repealed the Prior Ordinance and replaced it with Ordinance No. 6002 (the "Current Ordinance"). The Current Ordinance does not apply to individuals over the age of 18; it only regulates the sale of firearms to, and possession of firearms by, minors. Wilson was over the age of 18 when the case was filed, (Doc. 1, ¶ 18), and Plaintiffs did not amend their Complaint to include a challenge to the Current Ordinance.

Defendants responded to the Motion for Preliminary Injunction with a Motion asking the Court to dismiss the case, arguing (1) Plaintiffs lack standing and (2) even if one or more Plaintiffs have standing, the case is moot. The Court discusses the parties' arguments below, and in so doing may discuss additional facts as necessary.

## II. DISCUSSION

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction. "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quotation omitted). A factual attack asks the Court to consider facts outside the Complaint and its attachments, and Defendants contend this is the type of attack they are raising, (Doc. 26, p. 2)[1]—but the only facts outside the pleadings they present relate to the New

---

[1] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

Ordinance, which is relevant to only some of the jurisdictional issues. In particular, Defendants' arguments regarding Plaintiffs' standing rely solely on the Complaint's allegations and the Complaint's supporting affidavits. Regardless, in this case the distinction between a factual and facial attack is less important than it might be in other cases because the additional facts Defendants ask the Court to consider are undisputed, so an evidentiary hearing is not required.

The Court also reminds the parties that it has an independent obligation to consider its jurisdiction. *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Therefore, the Court's discussion may expand beyond the parties' analysis.

### A. Standing[2]

Article III of the Constitution requires that plaintiffs have standing to assert their claims, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and standing must be established separately for each plaintiff, for each claim, and for each form of relief requested. *E.g.*, *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *Friends of the Earth, Inc. v. Laidlaw Env't Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). An injury in fact must be a concrete and particularized invasion of a legally protected interest that is actual or imminent. *E.g.*, *id*. 339; *Lujan*, 504 U.S. at 560. With these general propositions in mind, the Court will separately consider each Plaintiff's initial standing to bring this suit.

---

[2] The Court can address jurisdictional issues in any order it chooses, *e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), and for clarity's sake it elects to address standing first.

### *1. Leonard Wilson Jr.*

Wilson is 18 years of age, lives in Miller County, Missouri, and has an uncle who lives in Jackson County. (Doc. 1, ¶¶ 18, 20; Doc. 1-2, ¶¶ 1, 3.) Wilson wished to purchase a handgun and ammunition from his uncle, who was willing to sell those items to Wilson, and the two agreed on a purchase price. (Doc. 1, ¶ 21; Doc. 1-2, ¶¶ 7-8.) "Wilson often visits his uncle and stays with him and his family in Jackson County, sometimes for multiple days at a time," (Doc. 1, ¶ 20), and the transaction was intended to take place on one of those visits. (Doc. 1-2, ¶ 9.) However, the Prior Ordinance prohibited the transaction. Wilson alleges he was also interested in purchasing a semiautomatic assault rifle "within the next three months" and possess it in Jackson County, (Doc. 1-2, ¶¶ 12, 14-16; *see also* Doc. 1, ¶ 22), but his possession of such a firearm in Jackson County would have violated § 3 of the Prior Ordinance.

"Plaintiffs satisfy the injury-in-fact element [of standing] if they allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Defendants argue Wilson's intentions were too speculative to demonstrate an injury. "'[S]ome day' intentions—[those] without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (emphasis in original); *see also, e.g.*, *Carney v. Adams*, 592 U.S. 53, 64 (2020); *Keller v. City of Fremont*, 719 F.3d 931, 952 (8th Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000).

The Court concludes Wilson has standing insofar as he challenges the restrictions on purchasing handguns because he alleges he intended to purchase a specific firearm and

ammunition for a specific price from his uncle but could not do so because of the Prior Ordinance. Wilson's plan is sufficiently specific and concrete to give rise to an injury because the Prior Ordinance outlawed this intended transaction.[3] With this understanding, there is little question that Wilson's injury was fairly traceable to the Prior Ordinance. It is also clear that his request for nominal damages constitutes redress for his past inability to conduct his transaction. *See generally Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).

In contrast, it is unlikely (at best) that an injunction issued now can redress any of Wilson's injuries because the Prior Ordinance no longer exists and the Current Ordinance does not apply to Wilson because he is over the age of 18, and it is not being challenged in any event. However, while "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), the Supreme Court has suggested that once initial standing is established questions about whether effective relief can be granted based on post-filing events is better analyzed as a question of mootness. "The doctrine of standing generally assesses whether [the plaintiff's] interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam*, 592 U.S. at 282; *see also Friends of the Earth*, 528 U.S. at 174, 190-91; *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 (8th Cir. 2025). Therefore, the Court will address Plaintiffs' request for equitable relief in Part II.C below.

### 2.  *Gun Owners of America, Inc.*

GOA is a membership organization that "was formed . . . to preserve and defend the Second Amendment rights of gun owners." (Doc. 1, ¶ 27.) GOA does not allege it suffered an injury of

---

[3] Wilson's plans to possess a semiautomatic assault rifle in Jackson County may constitute "some day" allegations that would not support standing—but the parties do not focus on this specific aspect of the case sufficiently to permit the Court to analyze it. The issue need not be resolved at this moment because of Wilson's concrete plan to purchase a handgun and ammunition from his uncle.

its own; instead, it supports its standing by relying on Wilson's standing, which is permissible. "An association has standing to bring suit on behalf of its members when [one of] its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181 (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The first two components are required by Article III, *United Food & Com. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 556 (1996), and they are satisfied here because Wilson is a member of GOA, (Doc. 1, ¶ 27; Doc. 1-3, ¶ 10), he has standing,[4] and the interests promoted by this litigation are consistent with GOA's purpose.

The third requirement for associational standing—that neither the claim nor the relief requires participation of the individual member relied on for standing—is a prudential requirement that applies unless it abrogated by Congress. *Brown Group*, 517 U.S. at 556-58. But if it is not abrogated by Congress, it bars the association from seeking damages (because damage claims require participation of the individual upon whom the group depends on for standing). *Missouri Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir. 2007); *see also Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128-29 (8th Cir. 2016). In *Brown Group*, the Supreme Court held that Congress abrogated the third requirement for associational standing by permitting labor unions to bring suits under the Worker Adjustment and Retraining Notification Act. *Brown Group*, 517 U.S. at 548-50, 557-58. In contrast, there is no indication that Congress intended to permit associations to sue for their members' damages under 42 U.S.C. § 1983.

---

[4] Plaintiffs allege GOA may have other members who were affected by the Prior Ordinance, (Doc. 1, ¶ 27; Doc. 1-3, ¶ 4), but this general assertion is insufficient to support standing for GOA. When a membership organization's standing is derived from the standing of one its members, it must identify that member and establish that member's standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-99 (2000).

Therefore, while GOA has standing to seek equitable relief, it does not have standing to seek Wilson's damages. (Of course, Wilson is fully capable of seeking his own damages, as demonstrated by his participation in this suit as a co-Plaintiff.) As stated earlier, the Court will separately address whether the requests for equitable relief are moot.

### 3. Gun Owners Foundation

GOF is a "nonprofit legal defense and legal foundation" that is "not a 'traditional' membership organization" in that it does not have any members. (Doc. 1, ¶ 28; *see also* Doc. 1-3, ¶¶ 5-6.) It nonetheless argues that it should be regarded similarly to a membership argument (like GOA) and therefore has standing based on *Friends of the Earth*, *Hunt*, and the other cases cited in Part II(A)(2), above. For support, it references a decision from the Northern District of Texas, which, citing prior Fifth Circuit precedent, concluded an entity without traditional members can have standing based on a "member's" standing if it has "indicia of membership." *Texas v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024) (citing *Funeral Consumers Alliance, Inc. v. Service Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012)). The Fifth Circuit relied on *Hunt*, which observed the Washington State Apple Advertising Commission did not have members "in the traditional sense" but held the state's apple growers and dealers "possess[ed] all of the indicia of membership in an organization" so the Commission could proceed based on the standing of one or more of its members. *Hunt*, 432 U.S. at 344. As the Supreme Court explained, the growers and dealers

> alone elect the members of the Commission; they alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them. In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests.

*Id.* at 344-45.

Even if the Supreme Court intended to potentially extend associational standing to charities and other donor-based organizations, GOA lacks standing under this theory for two reasons. First, it has not alleged that it has indicia of membership. More specifically, neither the Complaint (Doc. 1) nor the supporting affidavit (Doc. 1-3) contain facts similar to those the Supreme Court relied on in *Hunt*.[5] Second, GOA has not identified any member/donor who would have standing. It does not allege Wilson is a "member;" it only alleges that some of its "supporters are over the age of 18 but under the age of 21 and, like Wilson, also reside within or visit Jackson County, but are restricted in acquiring and possessing arms by the [Prior] Ordinance's provisions." (*See* Doc. 1, ¶ 28.)[6] An organization's general assurance that it has a member who possesses standing is insufficient. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-99 (2000). For these reasons, GFO lacks standing to challenge the Prior Ordinance.

### 4. The State of Missouri

The parties do not discuss whether the State has standing to sue one of its counties to either (1) seek redress for an alleged violation of citizens' civil rights or (2) enforce a state statute that allegedly preempts an ordinance. Plaintiffs posit some theories as to why the State has standing, (Doc. 1, ¶¶ 42-44; Doc. 33, pp. 14-15), but they are only stated generally. Regardless, the Court finds it unnecessary to address the issue now. Even if the State has standing, as will be discussed its request for equitable relief is moot and the Court declines to exercise supplemental jurisdiction over the state-law claim. Moreover, there is no immediate need to determine whether it has standing to seek nominal damages on Wilson's behalf because (1) Wilson is seeking nominal

---

[5] The supporting affidavit states that donors provide funds to support GOF's litigation, keep up to date with GOF's efforts through a variety of means, and have a "significant organizational attachment" to GOF. (Doc. 1-3, ¶¶ 6-8.) These facts are not similar to those in *Hunt*; moreover, these statements are undoubtedly true of a wide variety of charitable organizations, yet neither the Supreme Court nor the Eighth Circuit have held that charities have standing to assert claims based on injuries to their donors.

[6] Wilson's affidavit confirms he is a member of GOA, (Doc. 1-2, ¶ 2), but does not mention anything about GOF.

damages, and if he recovers the State cannot also recover damages on his behalf, and (2) the State's continued presence in this case does not affect continued progress in the case. It may become necessary later for the parties to further address the State's standing, but there is no need for them to do so now.

### B. Supplemental Jurisdiction Over Count III

The Court has original jurisdiction over Counts I and II because they arise under federal law. 28 U.S.C. § 1331. Count III asks the Court to hold that the Prior Ordinance violated § 21.750 of the Revised Statutes of Missouri, which is not a federal claim. The Complaint's jurisdictional statement, (Doc. 1, ¶ 33), references, *inter alia*, the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, but these are remedies and not causes of action and invoking them does not establish jurisdiction. *E.g.*, *United States v. Denedo*, 556 U.S. 904, 913-14 (2009) (discussing the All Writs Act); *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (discussing the Declaratory Judgment Act).

Thus, the Court does not have an independent basis for jurisdiction over Count III. Notably, Plaintiffs do not allege the Court has jurisdiction under 28 U.S.C. § 1332, and the Court doubts it does because, at a minimum, there is not diversity of citizenship between the parties. This leaves supplemental jurisdiction, 28 U.S.C. § 1367, which Plaintiffs also invoke. (Doc. 1, ¶ 33.) Count III qualifies for supplemental jurisdiction because it is a claim that "form[s] part of the same case or controversy under Article III of the" Constitution, 28 U.S.C. § 1367(a), but the exercise of supplemental jurisdiction is not mandatory. In particular, the Court can decline supplemental jurisdiction if "the claim raises a novel or complex issue of State law" or "in exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (4). The Court can apply these exceptions *sua sponte*, *e.g.*, *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006), and elects to do so here. The relevant portions of § 21.750 restrict

the power of counties, municipalities, and other entities in Missouri from enacting certain types of firearm regulations, but the extent and meaning of those provisions have not been discussed by Missouri courts. Moreover, a dispute between a state and one of its counties that involves questions of state law is more appropriately addressed by state courts. Therefore, the Court declines to exercise supplemental jurisdiction over Count III.

### C. Mootness

Finally, the Court addresses the issue of mootness. As discussed below, the Court concludes that all requests for equitable relief are moot.

> A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotations omitted; cleaned up). A case is no longer "live" when post-filing events prevent the Court from granting relief that affects the parties' rights. *E.g.*, *Chafin v. Chafin*, 568 U.S. 164, 173 (2013); *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). And significantly for present purposes, portions of a case can become moot while other portions continue. This can occur when a court is asked to (1) award damages to redress past injuries and (2) issue equitable relief to prevent future injuries. *E.g.*, *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981); *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1373 (8th Cir. 2022).[7]

---

[7] Plaintiffs initially focus on the case as a whole and argue it is not moot because of Wilson's claim for nominal damages. (Doc 33, p. 7.) This argument, however, assumes mootness affects a case only if all aspects of the case are moot; as explained in the text, this is not correct. Moreover, the cases Plaintiffs cite do not hold that the availability of nominal damages prevents a request for injunctive relief from becoming moot. *E.g.*, *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 n.1 (8th Cir. 2025) ("[W]e do not address the other forms of relief sought by Sorcan—i.e., injunctive and declaratory relief."); *Felts v. Green*, 91 F.4th 938, 940 (8th Cir. 2024) ("The City appeals the grant of declaratory relief and nominal damages" but the denial of injunctive relief was not appealed.). The Supreme Court case Plaintiffs rely on, *Uzuegbunam v. Preczewski*, also did not hold that a request for nominal damages could prevent a request for injunctive relief from becoming moot; the case addressed only the issue of nominal damages because the

Here, Wilson's claim for nominal damages is not moot, but his (and the other Plaintiffs') request for equitable relief is moot. As stated earlier, an award of nominal damages would redress Wilson's past injuries, but enjoining enforcement of the Prior Ordinance, or declaring that it was unconstitutional, will not affect his (or anyone's) rights.[8] In opposing this conclusion, Plaintiffs invoke the exception for issues that become moot through the defendant's voluntary cessation of the challenged conduct. Ordinarily, a defendant must satisfy a "heavy burden" in demonstrating that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *Friends of the Earth*, 528 U.S. at 189 (quotation omitted). However, the burden is different when the "mooting event" is a change or repeal of a statute, ordinance, or the like.

"When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are capable of repetition yet evading review." *Phelps-Roper v. City of Manchester, MO*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (cleaned up; quotations omitted); *see also Ness v. City of Bloomington*, 11 F.4th 914, 920 (8th Cir. 2021); *Libertarian Party of AR v. Martin*, 876 F.3d 948, 951 (8th Cir. 2017). The fact that the County could theoretically re-adopt the Prior Ordinance does not bar a finding of mootness.

> [S]tatutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted.

*Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013) (quotations omitted); *see also Moore v. Thurston*, 928 F.3d 753, 757 (8th Cir. 2019); *Libertarian Party*, 876 F.3d at 941. Such a request for equitable relief is moot even if it is obvious or certain that the County will enact legislation

---

plaintiffs "agreed that injunctive relief was no longer available" after the challenged policy was rescinded. 592 U.S. at 284.

[8] A declaratory judgment is regarded as equitable relief even though it is provided for by statute. *E.g.*, *Samuels v. Mackell*, 401 U.S. 66, 70 (1971). Moreover, the cases discussed herein address declaratory relief and injunctive relief collectively without distinction, and Plaintiffs do not suggest the analysis should be different for one or the other.

regarding firearms in the future. For instance, in *Teague*, the State of Arkansas argued it had mooted a constitutional challenge to statutes related to school transfers by amending them; the Eighth Circuit agreed, explaining that "the General Assembly will need to address these difficult issues again in 2015 if it decides to enact a new statute extending the perceived benefits of broadly available public school transfers. But there is no reason to believe the General Assembly will simply reinstate" the repealed section that had been subject to the plaintiffs' challenge. *Teague*, 720 F.3d at 978. Unless it is "virtually certain that the repealed policy will be reenacted," a statutory change renders a challenge to the former statute moot. *Roth v. Austin*, 62 F.3d 1114, 1119 (8th Cir. 2023). Thus, Plaintiffs' assertion that their requests for equitable relief are not moot unless the County demonstrates it is absolutely clear they will not re-adopt the Prior Ordinance is incorrect.

Plaintiffs further argue that the County's burden is only "slightly less onerous" than it would be for a non-governmental entity, (Doc. 33, p. 8), but this is also incorrect. For support, Plaintiffs rely on the Eighth Circuit's decision in *Prowse v. Payne*, 984 F.3d 700 (8th Cir. 2021). There, the plaintiff challenged the Arkansas Department of Corrections' refusal to provide hormone therapy to treat her gender dysphoria. The district court dismissed the case, and the plaintiff appealed. At oral argument it was learned that the defendants had permitted the course of treatment to commence approximately four months earlier and they assured the Court of Appeals that it would continue. It was in this context that the Eighth Circuit observed that while a defendant normally "faces a heavy burden to establish mootness by way of voluntary cessation . . . the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." *Prowse*, 984 F.3d at 703 (quotation omitted).

Significantly, *Prowse* did not involve a plaintiff's effort to enjoin repealed legislation or have repealed laws declared unconstitutional—in fact, the case did not involve a statute or

regulation at all. And the Eighth Circuit has consistently held that the repeal or amendment of challenged legislation moots a request for injunctive relief unless there is reason to believe the challenged/repealed legislation will be reenacted. *E.g.*, *Roth*, 62 F.4th at 1119; *Moore*, 928 F.3d at 757; *Libertarian Party*, 876 F.3d at 951; *Teague*, 720 F.3d at 977; *Phelps-Roper*, 697 F.3d at 687. The mere fact that the County could theoretically reenact the Prior Ordinance does not constitute an exception to mootness. There being no suggestion the County will reenact the Prior Ordinance, the requests for equitable relief are moot (but the requests for nominal damages are not).

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, (Doc. 25), is **GRANTED IN PART** and **DENIED IN PART** and Plaintiffs' Motion for Preliminary Injunction, (Doc. 9), is **DENIED**. As a result,

1. Defendant Gun Owners Foundation is **DISMISSED WITHOUT PREJUDICE** for lack of standing;

2. Count III is **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction over that claim;

3. All requests for equitable relief (including injunctive and declaratory relief) are **DISMISSED WITHOUT PREJUDICE** because they are moot;

4. Defendant Gun Owners of America is **DISMISSED WITHOUT PREJUDICE** because it does not have standing to seek damages on behalf of Wilson and its request for equitable relief is moot;

5. Wilson's claim for nominal damages will proceed; and

6. The State of Missouri's claim for nominal damages on Wilson's behalf will proceed, subject to a later determination (if necessary) as to whether it has standing to seek such relief.

**IT IS SO ORDERED.**

Date: <u>February 10, 2026</u>

<u>/s/ Beth Phillips</u>
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT