# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| LEONARD WILSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 25-00487-CV-W-BP |
| | ) | |
| JACKSON COUNTY, MISSOURI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DEFERRING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The suit challenges a since-repealed Jackson County ordinance related to the sale and possession of firearms.  It was originally filed by:

1. Leonard Wilson, Jr., ("Wilson"),

2. Gun Owners of America, Inc. ("GOA"),

3. Gun Owners Foundation ("GOF"), and

4. The State of Missouri ("the State").

Named as Defendants are (1) Jackson County, Missouri, (2) the Jackson County Sheriff, and (3) the Jackson County Prosecutor (with the latter two Defendants sued in their official capacities only).  Now pending is Wilson's and the State's Motion, which seeks Summary Judgment on one of their claims.  The Motion, (Doc. 41), is **GRANTED IN PART** and **DEFERRED IN PART**, as outlined below.

## I. BACKGROUND[1]

### A. Facts Giving Rise to Plaintiffs' Claims[2]

In November 2024, Jackson County passed Ordinance No. 5865 (the "Prior Ordinance"). Section 1 of the Prior Ordinance prohibited the sale or transfer of handguns and "handgun ammunition" to anyone under the age of 21.[3] Section 3 of the Prior Ordinance generally restricted anyone under 21 from possessing a "semiautomatic assault rifle."[4]

Wilson was 18 years of age when this suit was filed. He wished to purchase a handgun and ammunition from his uncle, who was willing to sell those items to Wilson, and the two agreed on a purchase price. (Doc. 51-3, ¶¶ 7-9.) However, the Prior Ordinance prohibited the transaction.

### B. Procedural History

Plaintiffs filed this suit in June 2025; Count I alleges Sections 1 and 3 of the Prior Ordinance violated the Second Amendment and Count II alleges those sections were unconstitutionally vague. Count III alleges the Prior Ordinance was preempted by a state statute. The Complaint sought injunctive relief, declaratory relief, nominal damages, attorney fees, and costs.

---

[1] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

[2] Defendants offer the same boilerplate response to each paragraph in Plaintiffs' Statement of Uncontroverted Facts, "deny[ing] the allegations, hearsay, speculation, and/or legal conclusions" contained therein. (Doc. 48, pp. 4-8.) The Court finds these objections to be largely unfounded, as most of the facts (and the most significant and relevant facts) consist of Ordinances and matters related to them (such as their dates of passage), so the facts are (1) amenable to judicial notice and (2) not seriously disputed.

[3] Specifically, Section 1 stated that "[a] person under twenty-one years of age may not purchase a handgun or handgun ammunition, and, except as otherwise provided . . . no person may sell or transfer a handgun or handgun ammunition to a person under twenty-one years of age." (Doc. 52-1.)

[4] Specifically, Section 3 stated that "[a] person at least eighteen years of age, but less than twenty-one years of age, may not possess a semiautomatic assault rifle except under" conditions set forth in Section 3 (which need not be repeated here.) (Doc. 52-1.) In one instance, Plaintiffs refer to this prohibition as appearing in Section 2, (*see* Doc. 42, p. 10), but this appears to be a typographical error.

Plaintiffs filed a Motion for Preliminary Injunction in July 2025. Approximately three and a half weeks later, Jackson County repealed the Prior Ordinance and replaced it with Ordinance No. 6002 (the "Current Ordinance"). The Current Ordinance does not apply to individuals over the age of 18; it only regulates the sale of firearms to, and possession of firearms by, minors. Wilson was over the age of 18 when the case was filed, and Plaintiffs did not amend their Complaint to include a challenge to the Current Ordinance.

Defendants responded to the Motion for Preliminary Injunction with a Motion asking the Court to dismiss the case. In an Order dated February 10, 2026, (the "Prior Order"), the Court denied Plaintiffs' Motion for Preliminary Injunction and granted in part Defendants' Motion to Dismiss. More specifically, the Court held:

1. GOF lacked standing to assert any claims,

2. All requests for injunctive relief were moot (which resulted in, among other things, the dismissal of GOA because it had standing to seek only equitable relief),

3. Count III—which asserted the Prior Ordinance was preempted by state law—would be dismissed for the additional reason that the Court declined to exercise supplemental jurisdiction to hear a dispute based on state law between the State and one of its counties.

(*See* Doc. 37, p. 13.)

This left Wilson and the State as the only Plaintiffs, and their only remaining claims were for nominal damages on Counts I and II. They now seek summary judgment on Count I; the Court addresses the parties' arguments, and discusses Count II, below.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing "that there is no genuine issue of material fact and [it] is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).

In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quotation omitted). A party opposing a motion for summary judgment may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

### A. Count I – Second Amendment

For reasons that will become apparent, the Court elects to discuss Wilson's and the State's Second Amendment claims separately.

### 1. Wilson

The Court agrees Wilson is entitled to summary judgment insofar as Section 1 of the Prior Ordinance is concerned. The Court defers consideration of his request to the extent he seeks judgment regarding Section 3.

4

<u>*(a). Section 1*</u>

Section 1 of the Prior Ordinance prohibited anyone under the age of 21 from buying a handgun. It also generally prohibited anyone from selling or "transferring" a handgun to a person under the age of 21. However, the Second Amendment provides in part that "the right of the people to keep and bear arms, shall not be infringed." Determining whether legislation violates the Second Amendment ordinarily requires conducting the analysis called for by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and Plaintiffs conduct that analysis. (*See* Doc. 42, pp. 12-17.) However, the Court does not need to do so because it concludes the outcome is dictated by the Eighth Circuit's decision in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), one of the cases cited by Plaintiffs. There, the Court of Appeals considered a Minnesota statute that prohibited people under the age of 21 from obtaining permits to openly carry firearms. The Eighth Circuit quoted *Bruen* for the proposition that

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Worth*, 108 F.4th at 687 (quoting *Bruen*, 597 U.S. at 17 (cleaned up)). Applying this standard, the court first held the Minnesota statute prohibited conduct protected by the Second Amendment because people over 18 are among those entitled to Second Amendment rights. *Id*. at 688-90. It then concluded that the age-based restriction was not consistent with the history and tradition of permissible firearm regulations. *Id*. at 693-98. Thus, *Worth* held the restriction prohibiting individuals between the ages of 18 and 21 from openly carrying a firearm was unconstitutional. This holding is applicable here, where Jackson County prohibited (1) anyone from selling or

transferring a handgun to individuals between the ages of 18 and 21 and (2) individuals between the ages of 18 and 21 from buying a handgun.

Defendants do not conduct their own *Bruen* analysis. They do not even mention *Worth*. Instead, they attempt to distinguish *Bruen* because of its discussion about the Second Amendment's relation to the right to self-defense, whereas Wilson wants a handgun so he can shoot it at a firearms range. (Doc. 48, pp. 9-11.) However, nothing in *Bruen*, or any other case, holds that the Second Amendment applies only to people who want a firearm for self-defense.

Defendants also argue that *Bruen* (and other cases) address the right to *possess* or *carry* a firearm and contend that no case has found the Second Amendment protects a person's ability to *purchase* or *acquire* a firearm. (Doc. 48, pp. 11-14.) They do not persuasively explain why this distinction is important to the analysis, and the Court does not believe it is. As a practical matter, if the Government cannot directly prohibit possession of a firearm, it cannot do so indirectly by making it unlawful to purchase or acquire a firearm; after all, a person cannot possess a firearm if they do not first somehow acquire one. And based on this reasoning, courts have considered and rejected arguments similar to Defendants'. "[T]he words 'purchase,' 'sale,' or similar terms describing a transaction do not appear in the Second Amendment. But the right to 'keep and bear arms' surely implies the right to purchase them." *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 589-90 (5th Cir. 2025); *see also*, *e.g.*, *Ortega v. Grisham*, 148 F.4th 1134, 1143-44 (10th Cir. 2025); *United States v. Knipp*, 138 F.4th 429, 434 (6th Cir. 2025); *Gazzola v. Hochul*, 88 F.4th 186, 195-96 (2d Cir. 2023).

For these reasons, the Court concludes that Section 1 of the Prior Ordinance violated Wilson's rights under the Second Amendment to the Constitution.

<u>**(b). Section 3**</u>

The Court has an independent obligation to confirm that it has jurisdiction. *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The Court defers consideration of Wilson's challenge to Section 3 because, as expressed in the Prior Order, the Court is not convinced Wilson has standing.[5]

Article III of the Constitution requires that plaintiffs have standing to assert their claims, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and standing must be established separately for each plaintiff, for each claim, and for each form of relief requested. *E.g.*, *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *Friends of the Earth, Inc. v. Laidlaw Env't Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). Here, the Court is not persuaded that Wilson suffered an injury that is fairly traceable to Section 3.

An injury in fact must be a concrete and particularized invasion of a legally protected interest that is actual or imminent. *E.g.*, *id*. at 339; *Lujan*, 504 U.S. at 560. "Plaintiffs satisfy the injury-in-fact element [of standing] if they allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Wilson did not own a semiautomatic rifle before filing this lawsuit. In an affidavit dated June 20,

---

[5] Because the Court addressed this issue (and others related to jurisdiction) in its Prior Order, it may quote or paraphrase the Prior Order without attribution.

2025, Wilson stated that he "wish[ed] to purchase and acquire an AR-15-style rifle" and "plan[ned] to make such a purchase within the next three months." (Doc. 51-3, ¶ 12.) However, "'some day' intentions—[those] without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original); *see also, e.g.*, *Carney v. Adams*, 592 U.S. 53, 64 (2020); *Keller v. City of Fremont*, 719 F.3d 931, 952 (8th Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). Moreover, the Prior Ordinance was repealed within the three-month window within which Wilson intended to purchase a semiautomatic rifle, and there is no reason to believe his effort to do so was thwarted by the Prior Ordinance.

The Court mentioned this issue in the Prior Order, noting that the parties "d[id] not focus on this specific aspect of the case sufficiently to permit the Court to analyze it" and concluding that the issue did not need to be addressed at that time because Wilson had standing to challenge Section 1. (Doc. 37, p. 5 n.3.)[6] However, the parties did not address the issue in the summary judgment briefing. And, importantly, standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. The case is now at the summary judgment stage; therefore, Wilson was required to submit affidavits or other material that can be considered at summary judgment to demonstrate he has standing to challenge Section 3. *E.g.*, *id.*; *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). But the only affidavit he has submitted—the one dated June 20, 2025—is insufficient for the reasons stated above.

---

[6] The Prior Order concluded Wilson had standing to challenge Section 1 because his affidavit demonstrated that he had concrete plans to purchase a handgun from his uncle. (Doc. 37, pp. 4-5.) The Court adheres to that conclusion.

The Record is now closed, and the Court does not believe Wilson has standing to challenge the constitutionality of Section 3 of the Prior Ordinance. Therefore, he must show cause why this aspect of his claim should not be dismissed for lack of jurisdiction.

### 2. The State

The Prior Order also questioned the State's standing, particularly with the dismissal of all requests for equitable relief. (Doc. 37, pp. 8-9.) At this point, the only claims left seek redress for Wilson's past injuries—and there is no explanation as to why the State has standing to seek redress for Wilson.

The Complaint cited legal theories related to the State's standing, (Doc. 1, ¶¶ 42-44), and the Plaintiffs briefly mentioned the matter in their opposition to Defendants' Motion to Dismiss, (Doc. 33, pp. 14-15), but those discussions focused on aspects of the case that were dismissed in the Prior Order: requests for equitable relief and an attempt to enforce a state law that purportedly preempted the Prior Ordinance. But now, only Wilson's request for nominal damages to redress his past injuries remains. Keeping in mind that standing must be established for each claim and for each form of relief, the State does not explain why it has standing to seek damages for Wilson.

The Complaint references the *parens patriae* doctrine, which permits the State to act as a representative to protect "an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). However, the State has never explained how the doctrine is properly invoked in this case, much less how it is properly invoked with respect to Wilson's request for nominal damages.

Critically, "[i]nterests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such

9

situations, the State is no more than a nominal party." *Id*. at 601. Moreover, the *parens patriae* theory generally does not permit the State to recover for damages suffered by a private individual. *E.g.*, *United States v. Santee Sioux Tribe of Nebraska*, 254 F.3d 728, 734 (8th Cir. 2001) ("[T]his doctrine is reserved for actions which are asserted on behalf of *all* of the sovereign's citizens." (emphasis in original)); *Pfizer, Inc. v. Lord*, 522 F.2d 612, 616-17 (8th Cir. 1975) (questioning *parens patriae* standing to seek damages).[7] It appears that the State is now no more than a nominal party in this case, which means—as explained in *Alfred L. Snapp & Son* and the other authorities cited above—it lacks standing.

The Court previously stated there was "no immediate need to determine whether [the State] has standing to seek nominal damages on Wilson's behalf because (1) Wilson is seeking nominal damages, and if he recovers the State cannot also recover damages on his behalf, and (2) the State's continued presence in this case does not affect continued progress in the case." (Doc. 37, pp. 8-9.) The Court also warned, however, that "[i]t may become necessary later for the parties to further address the State's standing," (Doc. 37, p. 9), and the State's request for summary judgment on Count I makes it necessary for the State to establish it has standing.

### B. Count II – Due Process

Count II alleges that Sections 1 and 3 are unconstitutionally vague. Specifically, it alleges that Section 1 is unconstitutional because the phrase "handgun ammunition" is not further defined to specify "what calibers or sorts of cartridges are permissible to sell to those 18-20 [sic], versus what is prohibited." (Doc. 1, ¶ 161.) It also alleges that Section 3 is vague for failing to define

---

[7] The Court notes that some statutes give states the authority to institute money-seeking suits on behalf of injured citizens. *See*, *e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 218-19 (1990) (discussing 15 U.S.C. § 15c(a)(1)). But 42 U.S.C. § 1983 is not such a statute.

what constitutes an "assault rifle."  (Doc. 1, ¶¶ 155-58.)  While the Motion does not seek summary judgment on Count II, the Court makes the following decisions regarding it.

First, the Court's previous concerns about Wilson's and the State's standing apply equally to Count II.   Therefore, (1) Wilson must explain why he has standing to pursue a Due Process challenge to Section 3 and (2) the State must explain why it has standing to raise any challenges (those in Count I and those in Count II) to either Section 1 or Section 3 of the Prior Ordinance.

Second, while Wilson has standing to raise his Second Amendment challenge to Section 1, his affidavit does not appear to establish his standing to raise a vagueness challenge to Section 1. His affidavit does not mention any confusion on his part or any other limitation imposed on him by the asserted vagueness of the phrase "handgun ammunition."  On the contrary, his affidavit suggests that Wilson understood his planned purchase of ammunition was prohibited by Section 1, (*see* Doc. 51-3, ¶¶ 10-11), in which case he (1) suffered no injury from Section 1's alleged vagueness and (2) therefore lacks standing to assert this claim.

Third, even if Wilson has standing to raise a vagueness challenge to Section 1, he must explain why it is necessary to resolve that issue.  Wilson suffered a single injury: interference with his ability to purchase a firearm and ammunition.  As stated above, the Court is granting Wilson summary judgment on his claim that Section 1's interference with his planned purchase violated his Second Amendment rights.  There appears no need for a ruling that the *same* injury was *also* caused by Section 1's violation of a separate Constitutional provision.  Relatedly, having already concluded that Section 1 violated Wilson's constitutional rights, the Court doubts that a conclusion that it was unconstitutional for additional reasons entitles Wilson to additional nominal damages. This is because an award of damages under § 1983 follows common law principles, *e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986), and under those principles plaintiffs

can recover only once for any injury they have suffered.  Wilson can have only one recovery for the denial of his ability to acquire and possess a firearm.

Finally, this case is set for a Pretrial Conference on July 24, 2026, and a bench trial on August 21, 2026.  Even if there is a need to resolve either the Second Amendment challenge to Section 3, or the Due Process challenge to either or both Sections, the Court is not persuaded that a trial would be necessary.  It is not clear whether evidence is necessary to resolve these challenges, but even if it is the Docket Sheet does not reflect that the parties engaged in any discovery.  And while neither party has requested summary judgment on Count II, the Court may find it appropriate to consider the issue *sua sponte* pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.  Finally, even if a trial is necessary or appropriate, the Court does not believe one can be held on August 21 given the legal issues that must be resolved first.  Therefore, the Court will vacate the settings for the pretrial conference and bench trial and solicit further information from the parties regarding how best to resolve Count II (assuming it needs to be resolved).

### D.  Further Proceedings

Within 21 days, Wilson and the State shall respond to this Order and address the following issues:

1. What evidence currently in the Record establishes that Wilson has standing to raise any challenges to Section 3 of the Prior Ordinance?

2. What evidence currently in the Record establishes that Wilson has standing to assert Count II with respect to Section 1 of the Prior Ordinance?

3. Why does the State have standing to assert any of the remaining claims?

4. To the extent portions of the Prior Ordinance are found unconstitutional for violating the Second Amendment, why should the Court address whether those portions also violate the Due Process Clause?

5. If Wilson or the State believes the Court must resolve Count II, what uncontroverted facts in the Record support their claim?[8]

Defendants shall have 14 days thereafter to respond to Wilson's and the States's submission. As part of their response to Item # 5, Defendants may also identify uncontroverted facts in the Record that would support judgment in their favor on Count II.

Wilson and the State shall have 14 days thereafter to file a Reply addressing Items 1-4 only. There is no need for a Reply with respect to Item # 5, as the Court is relying on the parties' submissions only to decide how to proceed on Count II (assuming there is a need to do so).

### III. CONCLUSION

The Motion for Partial Summary Judgment, (Doc. 41), is **GRANTED IN PART** and **DEFERRED IN PART**. Plaintiff Leonard Wilson, Jr., is granted summary judgment on Count I, but only to the extent he challenges the constitutionality of Section 1 of the Prior Ordinance. The Motion is deferred in all other respects. The parties shall submit additional briefing as outlined in Part II.D, above. Finally, the settings for the pretrial conference and bench trial are vacated and will be reset later if necessary.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
Date: June 24, 2026                  UNITED STATES DISTRICT COURT

---

[8] This citation of uncontroverted facts must refer to the facts in the Record and be supported in the manner specified in Rule 56(c)(1) and Local Rule 56.1.

13