**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LEONARD WILSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 25-00487-CV-W-BP |
| | ) | |
| JACKSON COUNTY, MISSOURI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING REMAINING CLAIMS FOR LACK OF JURISDICTION

The suit challenges a since-repealed Jackson County ordinance related to the sale and possession of firearms. It was originally filed by:

1. Leonard Wilson, Jr., ("Wilson"),
2. Gun Owners of America, Inc. ("GOA"),
3. Gun Owners Foundation ("GOF"), and
4. The State of Missouri ("the State").

The Defendants are (1) Jackson County, Missouri, (2) the Jackson County Sheriff, and (3) the Jackson County Prosecutor (with the latter two Defendants sued in their official capacities only).

On June 24, 2026, the Court issued an Order, (*see* Doc. 54), that granted in part and deferred in part Plaintiffs' Motion for Partial Summary Judgment. The Order also directed the parties to file Supplemental Briefs addressing issues related to the Court's jurisdiction. The Court has considered the parties' submissions and now dismisses all remaining claims.[1]

[1] The Court discussed these issues (and others related to jurisdiction) in its prior Orders, and it may quote or paraphrase those Orders without attribution.

## I. BACKGROUND

### A. Underlying Facts, and Plaintiffs' Lawsuit

In November 2024, Jackson County passed Ordinance No. 5865 (the "Prior Ordinance"). Section 1 of the Prior Ordinance prohibited the sale or transfer of handguns and "handgun ammunition" to anyone under the age of 21.[2] Section 3 of the Prior Ordinance generally restricted anyone under 21 from possessing a "semiautomatic assault rifle."[3]

Wilson was 18 years of age when this suit was filed on June 26, 2025. He wished to purchase a handgun and ammunition from his uncle, who was willing to sell those items to Wilson, and the two agreed on a purchase price. However, the Prior Ordinance prohibited the transaction. He also intended "to purchase a semiautomatic AR-15-style rifle within the next three months" and to "purchase additional semiautomatic rifles" in the next 12-18 months. (Doc. 1, ¶ 22; Doc. 51-3, ¶¶ 12, 15.)

The Complaint contained three counts. Count I alleged Sections 1 and 3 of the Prior Ordinance violated the Second Amendment and Count II alleged those sections were unconstitutionally vague. Count III alleged the Prior Ordinance was preempted by a state statute. Plaintiffs sought injunctive relief, declaratory relief, nominal damages, attorney fees, and costs.

### B. Repeal of the Prior Ordinance, and the Court's First Order

Plaintiffs filed a Motion for Preliminary Injunction on July 3, 2025. On August 25, 2025, (before the Motion for Preliminary Injunction was fully briefed) Jackson County repealed the Prior

[2] Specifically, Section 1 stated that "[a] person under twenty-one years of age may not purchase a handgun or handgun ammunition, and, except as otherwise provided . . . no person may sell or transfer a handgun or handgun ammunition to a person under twenty-one years of age." (Doc. 52-1.)

[3] Specifically, Section 3 stated that "[a] person at least eighteen years of age, but less than twenty-one years of age, may not possess a semiautomatic assault rifle except under" conditions set forth in Section 3 (which need not be repeated here.) (Doc. 52-1.)

Ordinance and replaced it with Ordinance No. 6002 (the "Current Ordinance"). The Current Ordinance does not apply to individuals over the age of 18; it only regulates the sale of firearms to, and possession of firearms by, minors. Wilson was over the age of 18 when the case was filed, and Plaintiffs did not amend their Complaint to include a challenge to the Current Ordinance.

Defendants responded to the Motion for Preliminary Injunction with a Motion asking the Court to dismiss the case. In an Order dated February 10, 2026, (the "First Order"), the Court denied Plaintiffs' Motion for Preliminary Injunction and granted in part Defendants' Motion to Dismiss. More specifically, the First Order held:

1. All requests for injunctive relief were moot (which resulted in, among other things, the dismissal of GOA and GOF because at best they had standing to seek only equitable relief),
2. GOF would be dismissed for the additional reason that it lacked standing to assert any claims, and
3. Count III—which asserted the Prior Ordinance was preempted by state law—would be dismissed for the additional reason that the Court declined to exercise supplemental jurisdiction to hear a dispute based on state law between the State and one of its counties.

(*See* Doc. 37, p. 13.)[4] This left Wilson and the State as the only Plaintiffs, and their only remaining claims were for nominal damages on Counts I and II.

### C. Plaintiffs' Motion for Partial Summary Judgment and the Court's Second Order

The State and Wilson then sought summary judgment and an award of nominal damages on Count I, alleging Sections 1 and 3 of the Prior Ordinance violated the Second Amendment. The Court issued an Order (the "Second Order") which granted the Motion for Summary Judgment in part. Specifically, the Second Order granted Wilson summary judgment on Count I to the extent

[4] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

that it alleged Section 1 of the Prior Ordinance violated his Second Amendment rights and awarded him nominal damages in the amount of one dollar. (Doc. 54, pp. 4-6.) The Court then directed the parties to file Supplemental Briefs addressing (1) the States's standing to seek damages for any claim, (2) Wilson's standing to seek damages based on the alleged unconstitutionality of Section 3 of the Prior Ordinance and (3) whether it was proper or necessary to address Count II's Due Process challenge in light of the Court's ruling in Wilson's favor on Count I's Second Amendment challenge. (Doc. 54, pp. 12-13.)

Wilson and the State concede there is no need to address the Due Process challenge to Section 1 in light of the Court's resolution of the Second Amendment challenge and ask that Count II be dismissed without prejudice. (Doc. 56, pp. 7-8.) The Court proceeds to address whether either Wilson or the State has standing to raise any of the remaining claims, keeping in mind that it has an independent obligation to confirm that it has jurisdiction. *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## **II. DISCUSSION**

Article III of the Constitution requires that plaintiffs have standing to assert their claims. *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted).

Significantly, standing must be established separately for each plaintiff, for each claim, and for each form of relief requested. *E.g.*, *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *Friends of the Earth, Inc. v. Laidlaw Env't Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Accordingly, in addition to being asked to explain their legal theories, Wilson and the State were directed to identify the facts in the Record that would support their assertions they have standing to seek damages. (*See* Doc. 54, pp. 12-13.) After considering the parties' arguments, however, the Court concludes that both Wilson and the State lack standing to seek damages for the remaining claims.

**A. Wilson's Challenge to Section 3 of the Prior Ordinance**

Wilson has not suffered an injury that is fairly traceable to Section 3 of the Prior Ordinance. Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation," *Lujan*, 504 U.S. at 561, but Wilson has not presented any evidence that he had concrete plans to purchase a firearm that was covered by Section 3. He relies on his sworn statement dated June 20, 2025, in which (as stated above) he declared that he "wish[ed] to purchase and acquire an AR-15-style rifle" and "plan[ned] to make such a purchase within the next three months." (Doc. 51-3, ¶ 12.) In contrast to his specific plan to purchase a handgun from his uncle, Wilson's general plan to purchase an AR-15-style rifle is insufficient. "'[S]ome day' intentions—[those] without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original); *see also*, *e.g.*, *Carney v. Adams*, 592 U.S. 53, 64 (2020); *Keller v. City of Fremont*, 719 F.3d 931, 952 (8th Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). Plaintiffs characterize Wilson's future plans as "specific and concrete," (*e.g.*, Doc. 56, p. 6), but they are neither.[5] Moreover, while a plaintiff may have

[5] Moreover, Plaintiffs' contention that "Wilson described the who, what, where, and even when of his plans in detail," (Doc. 56, p. 10), is a fair description of his plans regarding the purchase of the handgun from his uncle but does not describe Wilson's plans to engage in a transaction prohibited by Section 3 of the Prior Ordinance.

standing to seek damages to compensate for an actual violation of rights, a plaintiff cannot have standing to seek damages for alleged violations that never came to fruition. Here, Wilson stated on June 20, 2025, that he planned to purchase an AR-15-style firearm in the next three months. But the Prior Ordinance was repealed within those three months, and Wilson does not point to any evidence establishing it was in effect on whatever date he planned to engage in a transaction prohibited by Section 3. And significantly, Wilson has not argued, much less established, that Section 3 of the Prior Ordinance prevented or deterred him from purchasing a firearm. Assuming Section 3 was unconstitutional, its mere existence, alone, would be insufficient to grant Wilson (or anyone) standing to seek damages. What is necessary is evidence that Section 3 interfered with or deterred Wilson's concrete plans to purchase an AR-15-style firearm. Such evidence is absent; therefore, he lacks standing to seek damages for Section 3's existence under either Count I or Count II.[6]

**B. The State's Challenge to Both Sections of the Prior Ordinance**

To establish its standing, the State relies on the *parens patriae* doctrine. This requires it to identify "an injury to what has been characterized as a 'quasi-sovereign' interest, which is a judicial construct that does not lend itself to a simple or exact definition." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (hereafter "*Snapp*"). "Quasi-sovereign interests . . . consist of a set of interests that the State has in the well-being of its populace," an explanation the Supreme Court acknowledged is "so broad[ ], the concept risks being too vague to survive the standing requirements of Art. III[.]" *Id.* at 602. However, certain guides are

[6] The issue may be alternatively analyzed as a lack of redressability (the third requirement for standing). "[A] request for nominal damages satisfies the redressability element of standing *where a plaintiff's claim is based on a completed violation of a legal right*," *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (emphasis supplied), and here Wilson has not demonstrated Section 3 resulted in a "completed violation" of his rights.

established in case law, and they demonstrate that the State does not have a quasi-sovereign interest to support standing for the remaining claims in this case.

"[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id*. at 607. Such an interest can exist if "the State has alleged an injury to an identifiable group of individual residents," and one "helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id*. The State argues these factors favor standing in this case; however, the State ignores other important limits on, and requirements for, *parens patriae* standing. The Supreme Court also observed in *Snapp* that "[i]nterests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Id*. at 601. The Eighth Circuit has similarly recognized *parens patriae* standing must be based on some interest to the sovereign that is "apart from those of particular individuals who may be affected." *Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir. 1975) (quotation omitted; cleaned up). Here, however, the State offers nothing more than the fact that the rights of many of its citizens were affected. This is insufficient.

The Fifth Circuit has recently addressed claims similar to those advanced by the State here, and the Court finds those opinions instructive. The Fifth Circuit, like the Eighth Circuit, has recognized *parens patriae* standing requires that the state possess an interest separate and apart from the interest of its citizens and that injury to its citizens (even to many of its citizens) is not, alone, sufficient. *Paxton v. Dettelbach*, 105 F.4th 708, 715 (5th Cir. 2024); *Harrison v. Jefferson Parish Sch. Bd.*, 78 F.4th 765, 769 (5th Cir. 2023). In *Paxton*, Texas asserted that it had *parens*

*patriae* standing to challenge the constitutionality of certain federal firearm regulations. The Fifth Circuit described *Snapp* as holding that Puerto Rico had a quasi-sovereign interest to challenge conduct that "stigmatize[d] the entire Puerto Rican labor force and therefore implicated the economic interests of Puerto Rico itself beyond the interests of the specific individuals who lost job opportunities." *Id*. (citing *Snapp*, 458 U.S. at 609-10; emphasis removed). In contrast, Texas lacked standing to challenge federal firearm regulations because its "asserted quasi-sovereign interest [was] wholly derivative of the personal Second-Amendment [sic] interests of its citizens and therefore not a valid quasi-sovereign interest at all." *Id*. at 715-16. The Fifth Circuit further explained that "Texas may not merely litigate as a volunteer the personal claims of its citizens." *Id*. at 716 (quotation omitted).

The *Paxton* court compared Texas's arguments to those presented in *Harrison*. There, Louisiana claimed it had *parens patriae* standing to challenge a local school board's disciplinary policy based on a "quasi-sovereign interest in preventing its political subdivisions from violating the constitutional rights of 52,000 public schoolchildren." *Harrison*, 78 F.4th at 772 (quotation omitted). The Fifth Circuit rejected this argument because "Louisiana's asserted interest . . . [wa]s wholly derivative of the interests of" it citizens, and it was "not asserting a separate injury such as being denied its full participation in the federal system," or any other injury that "implicate[d] its own interests." *Id*. at 773. *Harrison* also observed that the injury must "emanate[ ] outside the state's sovereign authority," a requirements that was satisfied in *Snapp* because Puerto Rico sought to "protect[ ] its citizens against discrimination from *a state* [which] could only occur in federal court;" however, federalism concerns did not justify granting Louisiana standing to sue one of its own school districts. *Id*. at 773 (emphasis in original). Similarly, there are no federalism concerns in this dispute between the State and one of its counties.

Just like the would-be plaintiffs in *Paxton* and *Harrison*, the State here asserts only that many its citizens were harmed—but this does not establish a quasi-sovereign interest. *See Snapp*, 458 U.S. at 601. This point is further demonstrated by the relief that it seeks. As explained earlier, (1) standing must be established for each form of relief sought and (2) all claims for equitable relief have been dismissed; therefore, the State must establish standing to seek nominal damages. Not only did the State fail to explain why it has standing to seek nominal damages on behalf of any of its citizens, the Court independently concludes it lacks standing to do so. In seeking damages to compensate for past injuries, the State is attempting to vindicate its citizens' individual interests—not its own sovereign interests. The State does not have a *sovereign* interest in making sure that Wilson, out of all its citizens, is compensated for his past injuries, so it lacks standing to seek damages for Wilson.

The State has never clearly stated that it is seeking damages for each citizen whose attempt or plan to purchase a firearm was deterred by the Prior Ordinance, justified its standing to do so, or suggested any means of determining who those citizens might be. But, to the extent this is its intent, it lacks standing to seek monetary relief for its citizens. In *Pfizer, Inc.*, the Eighth Circuit held states lack *parens patriae* standing to seek damages on behalf of citizens who are independently able to sue to protect their own interests. 522 F.2d at 616-17. "A Parens patriae [sic] action cannot be brought to collect the damage claim of one legally entitled to sue in his own right." *Id*. at 616; *see also Snapp*, 458 U.S. at 600 (Explaining that the doctrine is intended to "prevent[ ] injury to those who cannot protect themselves." (quotation omitted)); *Commonwealth of Pennsylvania v. Kleppe*, 633 F.2d 668, 676 (D.C. Cir. 1976) ("[F]actors other than the degree of injury are influential in determining state standing. One of these . . . is the presence or absence of a more appropriate party or parties capable of bringing the suit."). The Eighth Circuit further

observed that granting a state standing in such a situation was tantamount to permitting a state to serve as the lead plaintiff in a class action and was thus impermissible. *Pfizer, Inc.*, 522 F.2d at 617-18. Therefore, any assertion the State has a quasi-sovereign interest in recovering nominal damages for *all* its injured citizens will not justify *parens patriae* standing. *See also Harrison*, 78 F4th at 773 ("[I]ndividual students can sue to get relief from [the school district's] alleged discrimination.").[7]

The rights possessed by the State were not violated; that is, the State did not have Second Amendment rights that were violated, nor did it have Due Process rights that were violated. Any interest the State has is derived entirely from its citizens' claims—claims its citizens are fully capable of asserting. Lacking a separate quasi-sovereign interest of its own, the State lacks standing.[8]

## III. CONCLUSION

For the reasons stated above, all remaining claims in this case are dismissed.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

Date: October 9, 2026

---

[7] Some statutes give states the authority to institute money-seeking suits on behalf of injured citizens. *See*, *e.g.*, *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 218-19 (1990) (discussing 15 U.S.C. § 15c(a)(1)). 42 U.S.C. § 1983 is not such a statute.

[8] This resolution makes it unnecessary to consider whether the State has standing to seek damages for claims upon which (1) Wilson has independently been awarded damages or (2) Wilson lacks standing to seek damages.